Strafford,
No. 4905.

MARILYN F. PIKE & *a. v.* GEORGE C. SCRIBNER.

Argued February 8, 1961.

Decided March 7, 1961.

204

*Fisher, Parsons & Moran* (*Mr. Moran* orally), for the plaintiffs.

*Devine, Millimet & McDonough* (*Mr. Shane Devine* orally), for the defendant.

KENISON, C. J. The principal issue before us is whether the verdict for the plaintiff was excessive. The defendant maintains that the award is "shocking to the conscience" and "manifestly exorbitant." The evidence discloses that the plaintiff, age thirty-three, used neck traction for six months, did orthopedic exercises and complained of severe headaches occurring every two or three weeks. The plaintiff was not employed at the time of the accident but beginning in April 1959 she commenced regular employment and during a period of eleven months lost only a few days' employment because of headaches. Her medical and hospital bills totalled $146. The plaintiff in support of the verdict emphasizes the fact that the injuries sustained by her were both painful and of a permanent nature, that this condition existed at the time of trial in 1960 and that she was still using the stretching device prescribed by her doctor.

It may be that the misleading, much-abused and emotionally charged phrase "whiplash injuries" was a factor in the verdict. Thomson, The Counterfeit Phrase of Neck Lash Injuries, 2 Orthopedics 125 (1960); Threadgill, Whiplash Injury — End-Results in 88 Cases, XXIX Medical Annals of the District of Columbia 266 (1960). The "expressions 'whiplash' and 'necklash' are not medical

terms and have been much abused." 3 Schwartz, Trial of Automobile Accident Cases, s. 1700 (1960). See also, Jackson and Ruth, Neck Injuries, 1 Trauma 7 (Feb. 1960); Schwartz, s. 1725, *supra;* Medicolegal Aspects of Head, Neck and Back Injuries (Edited by Stumpf and Horwitz) s. 149 (1955). However, it is impossible on the record before us to ascertain whether the phrase "whiplash injuries" caused the jury to fall into plain error in assessing damages or whether the verdicts were excessive for some other reason since the medical testimony is not part of the record in this appeal. Obviously the amount of damages recoverable in a personal injury suit depends in a large measure upon the medical testimony, and it would be difficult as well as unrealistic for this court to attempt to review the damages without such testimony.

It is argued that this is a classic challenge for this court to indicate that verdicts in personal injury suits will be scrutinized and not left entirely to the Trial Court's determination. But, as we have already indicated, this court in this case does not have the necessary tools to meet the challenge.

The power of this court to set aside a verdict because it is excessive or because it is inadequate is not disputed. *Demers* v. *Becker,* 91 N. H. 519; *Sylvain* v. *Peterman,* 89 N. H. 249; *MacDonald* v. *Appleyard,* 94 N. H. 362, 363; *Gomes* v. *Roy,* 99 N. H. 233. While in the usual case the action of the Trial Court has been upheld there are instances where the action of the Trial Court has not been allowed to stand. *Gomes* v. *Roy, supra; Smith* v. *Turner,* 92 N. H. 49. Upon the record here we cannot rule as a matter of law that the verdicts were excessive. Anno. 16 A. L. R. (2d) s. 117; Note, Grounds for a New Trial in New England — Inadequate or Excessive Damages, 39 B. U. L. Rev. 393, 414 (1959). Accordingly the order is

*Judgment on the verdicts.*

All concurred.